## STOKE CLARK v. THE STATE.

### No. 4019.   Decided May 26, 1909.

**1.—Murder—Charge of Court—Murder in the Second Degree—Manslaughter.**

See opinion for charge of court on murder in the second degree, and manslaughter, held to be correct.

**2.—Same—Charge of Court—Deadly Weapon—Presumption of Law.**

Where upon trial for murder the evidence showed that the deceased in his attack upon defendant used a pistol as a firearm, the court should have charged article 676 Penal Code, in respect to the use of a deadly weapon.

**3.—Same—Charge of Court—Self-Defense.**

Where upon trial for murder the evidence showed that quite a number of shots were fired by defendant and deceased, and that they emptied their six-shooters at each other, and continued to shoot as long as they could, the court should have charged that defendant had the right to shoot the deceased as long as it reasonably appeared from his standpoint that his life was in danger, or that he was in danger of serious bodily injury.

**4.—Same—Charge of Court—Self-Defense.**

Where upon trial for murder the court on the general issue of self-defense submitted a proper charge, there was no error.

**5.—Same—Evidence—Res Gestae—Shorthand Facts.**

Where upon trial for murder it was shown by a witness that about five minutes after the shooting, some forty yards from the scene of the homicide appellant was seen bleeding, excited and leaning on another, etc., and that he handed his pistol to a policeman calling on him to protect him, etc., it was error to exclude the statement of the defendant made at that time that he killed the deceased in self-defense. This was a shorthand rendering of the facts and res gestae. Overruling Bateson v. State, 46 Texas Crim. Rep., 34.

**6.—Same—Evidence—Declaration of Deceased—Undisclosed Motives of Deceased.**

Upon trial for murder it was reversible error to admit in evidence the declaration of deceased, when he was starting in the direction of defendant, made out of the presence and hearing of defendant, to the effect that he was going to arrest him; and this although the court admitted same because said remark was made at the time deceased drew his pistol, and also that the matter of drawing the pistol was brought out by the defendant. Following Wooley v. State, 3 Texas Ct. Rep., 236, and other cases.

Appeal from the District Court of Parker. Tried below before the Hon. J. W. Patterson.

Appeal from a conviction of murder in the second degree; penalty, seven years confinement in the penitentiary.

The opinion states the case.

*B. D. Shropshire* and *Hood & Shadle,* for appellant.—On question of giving in charge article 676, Penal Code, Jirou v. State, 53 Texas Crim. Rep., 18; 108 S. W. Rep., 655, and cases stated in the opinion. On question of court's failure to charge that defendant had the right to shoot as long as there was danger: West v. State, 2 Texas Crim. App., 460; Bean v. State, 25 Texas Crim. App., 346.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was indicted in the District Court of Parker County, charged with the murder of Homer White. He was on to wit, November 18, 1908, convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of seven years.

That he shot White and killed him in Weatherford about the 4th day of February, 1908, is not denied. He rests his defense on the ground of self-defense, and the case involves some question of his right to resist an unlawful arrest, and an arrest undertaken by means and force not reasonably necessary for that purpose. There were many issues in the case, and it was in many of its aspects a case of difficulty, and many complex issues involved in it, but in respect to the charge of the court, except in matter hereafter referred to, as we believe, subject to serious criticism.

1. Among the errors relied on for a reversal is the alleged error on the charge of the court in the sixteenth paragraph of the same, where, among other things, the jury are instructed as follows: "If you believe from the evidence, beyond a reasonable doubt, that the defendant, with a deadly weapon or instrument, reasonably calculated and likely to produce death by the mode and manner of its use, in a sudden transport of passion, without adequate cause, and not in defense of himself against an unlawful attack, reasonably producing a rational fear or expectation of death or serious bodily injury, with the intent to kill, did, with a pistol, within the county of Parker and State of Texas, on or about the 4th day of February, 1908, shoot and thereby kill Homer White, as charged in the indictment, you will find him guilty of murder in the second degree, and so say in your verdict, and assess his punishment at confinement in the State penitentiary for any period that the jury may determine and state in their verdict, provided that it be for not less than five years. This charge has been held to be not error in the case of Waters v. State, 54 Texas Crim. Rep., 322, 114 S. W. Rep., 628, and in many cases decided since then. The same question is also raised in respect to the charge of the court on manslaughter in the twenty-third paragraph of same. There was, as we believe, no error in the court's instruction on this subject.

2. The court erred in not giving in charge to the jury the substance of article 676 of our Penal Code. This article is as follows: "When the homicide takes place to prevent murder, maiming, disfiguring or castration, if the weapons or means used by the party attempting or committing such murder, maiming, disfiguring or castration are such as would have been calculated to produce that result, it is to be presumed that the person so using them designed to inflict the injury." In this case the weapon used by White was a pistol used as a firearm. In respect to the use of a deadly weapon, it has been the uniform holding of this court, since the case of Kendall v. State, 8 Texas Crim. App., 569, that the court must give, in charge to the jury, the

substance of this article of our Penal Code. We have recently discussed this matter at great length in the case of Renow v. State, not yet reported. See also Jones v. State, 17 Texas Crim. App., 602; King v. State, 13 Texas Crim. App., 277; Cochran v. State, 28 Texas Crim. App., 422; Ward v. State, 30 Texas Crim. Rep., 687, and Yardley v. State, 50 Texas Crim. Rep., 644; 18 Texas Ct. Rep., 759.

3. Complaint is also made that the court failed to instruct the jury, in connection with appellant's right of self-defense, that he had the right to shoot the deceased, Homer White, as long as it reasonably appeared to him, looking at the situation from his standpoint, that his life was in danger, or that he was in danger of serious bodily injury at the hands of White. The evidence in brief showed that quite a number of shots were fired—indeed, that appellant and deceased emptied their six-shooters at each other, and that they continued to shoot as long as they could. We think, in view of the facts, that it was important that a charge to this effect should have been given.

4. Complaint is made that the charge of the court on self-defense in other respects is insufficient, and does not properly present this issue. To this we can not agree. The charge of the court, as we believe, is an admirable presentation of the law, except in respects above indicated, upon this issue. Among other things, the court instructed the jury as follows: "Homicide is permitted and justified by law when committed for the purpose of protecting one against an unlawful attack producing a reasonable fear or expectation of death or serious bodily injury. If you find that the defendant did shoot and kill the said Homer White with a pistol, and if you believe that, at the time he so shot and killed the said White, that said White had made, or was making, or was in the act of making, an unlawful attack upon the defendant, of such a character as to put the defendant in danger of death, or serious bodily injury, or of such character as to cause it reasonably to appear to the defendant, viewed from his standpoint, that he was in danger of death or serious bodily harm, and that he killed the said Homer White to protect himself against such attack, you will find the defendant not guilty.

"A person has the right to defend himself against the reasonable appearance of danger as he has against actual danger. And in determining whether or not it reasonably appeared to the defendant that he was in such danger, you will view the case from the standpoint of the defendant, and view the facts and circumstances of the case as they then reasonably appeared to him.

"A party attacked is never bound to retreat, but may stand his ground and make his defense."

5. Again, complaint is made that the court erred in refusing to admit in evidence what is claimed to be a *res gestae* statement of appellant which he offered to prove by the witness Easley. The facts touching this matter, as evidenced by the bill of exceptions appearing in the record, are to this effect: Easley testified that at the time of the killing

of Homer White, he, witness, ran the Arlington Hotel in Weatherford, and that he heard the shooting; that shortly after the shooting appellant and a woman named Ledford came to his hotel; that it had not been over five minutes from the time the last shot was fired until they reached his hotel; that in his opinion it was not over forty yards from said hotel to the place of the shooting; that when appellant and this woman came into the hotel he was weak, wounded and bleeding, and leaning on the Ledford woman, and the left pocket of his overcoat was on fire; that as soon as they came in appellant stated to a policeman named Henry that if he would protect him he would give him——the policeman——his pistol, and that Henry assured him that he would be protected, and appellant then gave up his pistol. Thereupon, in this connection, appellant proposed to prove, and could have proven by the witness Easley, that at the time and place when appellant surrendered his pistol to said Henry, appellant said to him that he had killed White in self-defense. This statement was offered as a part of the *res gestae* in connection with the proof above recited, and with reference to all the facts and evidence, and particularly the short time intervening between the shooting and the declaration, with the further proof that appellant was at the time growing weak from the loss of blood, and seemed to be suffering great pain. This testimony was objected to on the ground that it was self-serving, and made at the time and place when the appellant would be forming his defense, and, further, that it expressed a conclusion on the part of the witness which involved both the law and the facts, and such as could not be testified to by him while he was a witness on the stand. The court, in his explanation allowing the bill, stated that all the declarations made by appellant at the time described were admitted, except that portion wherein appellant said, in the presence of Easley, that he had shot the man, Homer White, in self-defense. Whether in any case a statement is *res gestae* must depend to a large extent upon the facts and circumstances surrounding the parties at the time. In view of the fact that the shooting occurred within forty yards of where the statement was made; that appellant came almost directly from the scene of the firing to the hotel, his condition, his loss of blood, his excitement, and all the circumstances, it seems to us, would well have justified the court in admitting this testimony on the ground that it was a part of the *res gestae,* and such we believe it to be. As we gather from the bill, the learned trial court seems to have rested his action in excluding the particular portion of the testimony ruled out upon the ground that it was a conclusion, and not a statement of the facts. That the declaration was somewhat in the form of a conclusion is undeniable. As to whether in any case one has acted in self-defense, or kills another in self-defense, may be a mixed question of law and fact, and yet it seems clear that, where one in agony or excitement makes the declaration that he had shot another in self-defense, it is, after all, something more than a conclusion, and is equivalent to the affirmation that he had shot his assailant in

protection of his own person or his own life. It is a shorthand rendering of the facts, and is consistent alone, and embraces the statement that the act was done not in aggression, but for the purpose of warding off or preventing injury or death. See Douglass v. State, 54 Texas Crim. Rep., 639; 114 S. W. Rep., 808; Gregory v. State, 50 Texas Crim. Rep., 73; 16 Texas Ct. Rep., 476; Wakefield v. State, 50 Texas Crim. Rep., 124; 16 Texas Ct. Rep., 558; Craig v. State, 30 Texas Crim. App., 619; Bice v. State, 51 Texas Crim. Rep., 133; 19 Texas Ct. Rep., 61; Scott v. State, 49 Texas Crim. Rep., 386; 15 Texas Ct. Rep., 535; Gray v. State, 47 Texas Crim. Rep., 375; 11 Texas Ct. Rep., 622; McGee v. State, 31 Texas Crim. Rep., 71; Kenney v. State, 9 Texas Crim. App. 888; Groomes v. State, 40 Texas Crim. Rep., 672; Pratt v. State, 53 Texas Crim. Rep., 281; 109 S. W. Rep., 138; Ex parte Albitz, 29 Texas Crim. App., 128; Commissioners v. Van Horn, 4 Lack Leg. N. (Pa.), 63; see Cyc., vol. 21, p. 973, foot note; Lockhart v. State, 111 S. W. Rep., 1024; Connell, Jr., v. State, 46 Texas Crim. Rep., 259; 10 Texas Ct. Rep., 890. We think the rule laid down in Bateson v. State, 46 Texas Crim. Rep., 34, and other cases on which the trial court evidently acted, is not correct.

6. Again, it is urged that the court erred in admitting the testimony of the witness Brown as to the declaration made by deceased, when starting in the direction of appellant, to the effect that he was going to arrest him. This question is not free from difficulty, and in view of its importance and difficulty we make a full statement as to how this matter arose and the grounds upon which our decision in respect to the matter rests. While on the stand the witness Brown was asked by the State the following question: "Q. At the time, or about the time he (deceased) drew his pistol, what remark did he make, if anything? A. That he was going to arrest him—Stokes Clark." This testimony was objected to for the reason that the remark in question was made in the absence of appellant, and not in his hearing, and he would not, therefore, be bound by any statement made by deceased, and further, because appellant did not know that deceased was an officer, had not been so informed, and further, that appellant was a stranger to deceased, and did not know him. It is also shown in the bill that this was a dark night; that at the time deceased started to intercept appellant and his woman companion he could only see their forms, and that they were thirty-five or forty yards away, and there was no testimony that appellant heard the remark in question. It appeared by the bill that Brown was placed on the stand and examined by the State on direct examination; that no question was asked as to anything said, or remark made by deceased, at this time, and was asked no question about deceased drawing his pistol. It further appeared that on cross-examination counsel for appellant asked the witness the direct question, if deceased, at the time he started out to where appellant was, did not draw a pistol, and the witness answered that this was a fact. On redirect examination it appears that the witness was asked by counsel for

the State if the deceased, at the time he drew his pistol, made any remark, to which the witness replied, giving the answer above quoted. This answer was admitted for the reason, as stated by the court, that the evidence showed that the remark was made at the time the pistol was drawn, and for the reason that it was admissible to explain the act of drawing the weapon since that was brought out by the defendant. In the case of Wooley v. State, 3 Texas Ct. Rep., 236, it was held by this court that the acts and declarations of the deceased, though *res gestae,* are not admissible if they tend to prove a fact which affects the defendant and he has no knowledge of such fact. In that case an inquiry was made as to what deceased had said on the morning of and just before the homicide as to his object in going into the Wooley field, and his purpose in going from thence to one Griffiths, who lived beyond the Wooley farm, and in the direction of where deceased was killed, to get employment. Here the declaration was explanatory of the object of his journey, and made at a time he was setting out upon such journey. The objection to the testimony there was practically the same as made here—that the appellant was not present at the time, and knew. nothing as to the purpose disclosed in such conversation, and that deceased was on a peaceful and lawful mission. · In discussing the matter there Judge Henderson, speaking for the court, says: "It is true the testimony is *res gestae* of deceased's act; that is, his verbal act in connection with and explaining his conduct in being on the Wooley farm; but *res gestae* is not always admissible, especially where it makes proof of a fact that is bound to materially affect a defendant, and he has no notice or knowledge of such fact." A quite similar question also came before the court in the case of Brumley v. State, 21 Texas Crim. App., 222. Evidence was there offered in substance that the object of the deceased in passing by defendant's house on the morning of the homicide was not for the purpose of encountering Brumley or provoking a difficulty with him. The objection was there made, among others, that Brumley had no notice of the purpose of deceased in coming to or by his house, and it was not shown that Brumley knew the motive of deceased in riding towards him so soon after said threats . had been made, and that Brumley was authorized to act on reasonable appearances of danger, whereas the evidence tended to show no danger existed, and the testimony would have the effect on the mind of the jury to destroy his legal right of self-defense. In discussing the matter, Judge White says: "It is a general rule that, 'in cases where it is material to inquire into the demeanor, conduct and mental feelings of an individual, at a particular period, the declarations made and the expressions used at the period in question are in their nature original evidence. . . . Verbal and written declarations are often said to be admissible as a part of the *res gestae.* As such they are most properly admissible when they accompany some act, the nature, object or motives of which are the subject of inquiry. In such cases words are receivable as original evidence, on the ground that what is said at the

time affords legitimate, if not the best, means of ascertaining the character of such equivocal acts as admit of explanation from those indications of the mind which language affords.' " (1 Phil. on Ev., Cowan & Hill's Notes, 3 ed., 1859, pp. 181-185.) See also 67 Ga., 600. This general rule, however, is subject to the rights of an appellant to act on reasonable appearances of danger, and he quotes approvingly from the case of State v. Zellers, 2 Halst., N. J. Rep., and says: "In the early case of State v. Zellers (2 Halst., N. J. Rep.), where the State offered to prove a conversation between the deceased and a witness, in which the deceased told the witness what his intentions were in going to the place where the homicide was committed, on objection by the defendant, the court held that the conversation could not be proved; that the question to be determined was, What excited the prisoner to the commission of the act? Everything that could operate upon his mind may be proved, but you can not give in evidence the conversation or acts of the deceased which never came to the knowledge of Zellers, for they could have no influence upon his mind, and could neither extenuate nor justify the crime." And in conclusion Judge White says: "It is a rule not only statutory, but of almost universal acceptation, that a party may act upon reasonable appearances of danger, and that whether danger is apparent or not is always to be determined from the defendant's standpoint. (Penal Code, arts. 570, 574; Whart. on Hom., 2 ed., sec. 4931; Whart. Crim. L., sec. 488; The State v. Cain, 20 W. Va., 679; Haney v. Conner (Ky.), 5 Crim. L. Mag., 47; Jordan v. The State, 11 Texas Crim. App., 435; King v. The State, 13 Texas Crim. App., 277; Gilly v. The State, 15 Texas Crim. App., 287; Jones v. The State, 17 Texas Crim. App., 602.)

"Now, in this case it was immaterial, so far as defendant's rights were concerned, what were the motives of the deceased, McAdams, in coming to the house of the defendant on the fatal morning of the homicide; that is, it is clearly immaterial whether his mission was a peaceable one, to wit, going to his brother's for the purpose of getting a wagon. Such motives and intentions could not possibly have affected defendant's conduct, because the evidence shows that they had never been communicated to him, and that he was wholly ignorant of them. He should not be held in any way bound by such undisclosed motives and intentions, and, so far as he was concerned, they could not throw any light upon the immediate transaction, to wit, the homicide. In our opinion the evidence was inadmissible." And so in this case appellant was not advised, or, in the nature of things, could he have known the purpose of deceased, as evidenced by his statement and declarations testified to by Brown.

There are a great many other questions raised in the record which we have not discussed. It is a case of difficulty, but except in the respects above noted the case was, as we believe, well and fairly tried by the learned trial court.

For the errors pointed out the judgment is reversed, and the cause remanded for a trial in accordance with law.

*Reversed and remanded.*

BROOKS, Judge, absent.