### Joe Reagan v. The State.

No. 2211.   Decided May 21, 1913.

**1.—Murder—Clothing of Deceased—Evidence.**

Where, upon trial of murder, the evidence raised a sharp conflict as to the position of deceased when the first shot was fired, there was no error in admitting in evidence the clothing worn by deceased at the time of the shooting.

**2.—Same—Evidence—Husband and Wife—Cross-Examination.**

Where, upon trial of murder, the defendant's wife had testified on direct examination to witnessing the shooting, etc., there was no error in permitting the State, on cross-examination, to show that at the time of the shooting she was having a conversation over the telephone and could not have seen the shooting.

**3.—Same—Evidence—Rebuttal—Contradicting Witness.**

Where the wife of the defendant had testified to witnessing the shooting and denied having a conversation over the telephone with a certain party at said time, there was no error in permitting the State, in rebuttal, to show that she did have such conversation.

**4.—Same—Evidence—Declarations by Defendant—Res Gestae.**

Where it did not appear, from the record on appeal, what length of time had elapsed between the shooting and the declarations by the defendant that deceased came at him with a knife, this court can not determine whether the same was admissible as res gestae.

**5.—Same—Evidence—Exhibit—Knife Used—Practice.**

Where, upon trial of murder, the defendant introduced in evidence the knife that he claimed was found near the body of the deceased, but failed to have the same described by any witness, and after adjournment of court asked

for an order to send this knife up as an exhibit, which the court refused, the same was not reversible error, in the absence of a showing that the trial judge abused his discretion. The application for such order should have been made to this court.

### 6.—Same—Charge of Court—Murder in the First Degree.

Where defendant was convicted of murder in the second degree, his complaint to the charge of the court on murder in the first degree thereby passed out of the case; besides, the same was correct.

### 7.—Same—Murder in the Second Degree—Charge of Court.

Where the court submitted a proper charge on murder in the second degree and instructed the jury as to the facts that would authorize a conviction, and therein stated "and not in defense of himself, and not under circumstances which would reduce the offense to manslaughter, did unlawfully, with implied malice, shoot and thereby kill," etc., there was no reversible error on that ground. Following Puryear v. State, 56 Texas Crim. Rep., 231, and other cases. Distinguishing Roberts v. State, recently decided.

### 8.—Same—Manslaughter—Charge of Court—Self-defense—Provocation.

Where, upon trial of murder, there was evidence that deceased used insulting language during the difficulty that resulted in the homicide and which conveyed an insult to defendant's wife, and there was also evidence of a prior difficulty and threats by deceased against the defendant, and the court, in his charge, limited the provocation to such as arose at the time of the homicide, the same was reversible error.

### 9.—Same—Charge of Court—Adequate Cause—Previous Provocation— Threats.

Where the evidence showed previous provocation and communicated threats, the jury should have been instructed on passion and adequate cause, that they should consider such previous provocation as such and threats, in passing on the provocation occurring at the time of the homicide.

### 10.—Same—Insulting Words and Gestures—Assault and Battery—Charge of Court.

Where, upon trial of murder, there was no evidence calling for a charge of the court on insulting words or gestures or an assault and battery so slight as to show no intention to inflict pain or injury when not amounting to adequate cause, it was error to charge thereon, especially, where defendant claimed insulting communications and threats in the presence of his wife, which would amount to adequate cause, under article 1130, Penal Code.

### 11.—Same—Charge of Court—Self-defense.

Where, upon trial of murder, the State's theory was that defendant killed deceased while he was going along the public road, but defendant contended that deceased entered his yard and was guilty of abusive and threatening conduct, the charge of the court which instructed the jury that defendant would have the right to use all necessary force to expel deceased from his premises, but no right to eject deceased from the public road was error; there being no evidence calling for this latter qualification.

### 12.—Same—Charge of Court—Self-defense—Defense of Property.

Where, upon trial of murder, the evidence raised the issue of self-defense and the right of the defense of property against an intruder, separate and distinct charges should have been given on these two separate issues, and a combination of the two was error.

### 13.—Same—Change of Law—Murder—Penalty.

See opinion with reference to the new law on murder, and that the jury would not be authorized under the said new law to assess the penalty now assessed against murder in the first degree.

Appeal from the District Court of Limestone. Tried below before the Hon. H. B. Daviss.

Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*Kennedy & Blackmon* and *Williams & Williams,* for appellant.—On question to have sent up to this court the knife introduced in evidence: Ward v. State, 30 Texas Crim. App., 687; Kendall v. State, 8 id., 569; Ivory v. State, 48 Texas Crim. Rep., 279; Cooper v. State, 48 id., 36; Hall v. State, 66 S. W. Rep., 783.

On question of court's charge on murder in the second degree: Morgan v. State, 16 Texas Crim. App., 593; Ellison v. State, 12 id., 557; Turner v. State, 16 id., 378; Miles v. State, 18 id., 156.

On question of court's charge on self-defense and defense of property, etc.: Kannmacher v. State, 51 Texas Crim. Rep., 118, 101 S. W. Rep., 238; Redman v. State, 52 Texas Crim. Rep., 591, 108 S. W. Rep., 365; Gillespie v. State, 53 Texas Crim. Rep., 167, 109 S. W. Rep., 158; Thomas v. State, 45 Texas Crim. Rep., 111.

On question of adequate cause: Gillespie v. State, 53 Texas Crim. Rep., 167, 109 S. W. Rep., 158; Redman v. State, 52 Texas Crim. Rep., 591, 108 S. W. Rep., 365; Rogers v. State, 149 S. W. Rep., 127; Bracken v. State, 29 Texas Crim. App., 362; Freeman v. State, 46 Texas Crim. Rep., 318; Attaway v. State, 41 id., 395.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of cross-examination of defendant's wife and defective bill of exceptions: Conger v. State, 63 Texas Crim. Rep., 312.

HARPER, Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for twenty-five years.

In the first bill of exceptions it is shown that appellant objected to the introduction of the clothing worn by deceased at the time of the shooting. In the testimony there is a sharp conflict as to the position of deceased when the first shot was fired. Appellant contended that deceased was advancing on him with an open knife, while the contention of the State was that appellant shot deceased from ambush as he was going down the public road. Under these circumstances the shot holes in the clothing would be of material aid to the jury in determining which theory of the case was the correct one, and the court did not err in admitting the clothing in evidence.

Appellant's wife, Mrs. Joe Reagan, testified in his behalf, and on cross-examination she was asked by the State that if on the morning of the shooting and about the time of the shooting she did not have a conversation with Mrs. Hewitt over the telephone, and which conversation was abruptly broken up. Mrs. Reagan had testified on direct examination

to witnessing the shooting, and testified to facts in the first place which would tend to show her husband acted in self-defense, and, secondly, if not in defense of himself, then under circumstances which would reduce the offense to manslaughter. The State's contention was that she did not witness the shooting, but at the time was talking over the telephone to Mrs. Hewitt. This was not a cross-examination of the wife about a matter she had not testified to on direct examination, but was an effort to show the falsity of her testimony on direct examination, and was permissible. Neither did the court err in permitting Mrs. Hewitt to testify in regard to this telephone conversation in rebuttal. The testimony of the wife of one on trial, when a witness, is subject to attack the same as any other witness.

Dr. W. A. Bedford was a witness for the State, and testified to the nature and fatality of the wounds received by deceased. On cross-examination by defendant it was shown he was called by appellant, and then he was asked what did appellant say to him about the difficulty. The witness would have answered, if permitted, that appellant at the time he called him stated "He had killed Henry Justice because he was at the time running on him with a knife." This testimony, if res gestae, was very material to defendant's defense, as it would have supported the testimony of him and his wife on the trial as contradistinguished from the theory of the State as testified to by Mr. and Mrs. Plunkett and other witnesses for the State. The record discloses that at the time of the killing the doctor was in the town of Thornton, some miles away from the scene of the killing, and could not and did not know the time of the killing, nor the time that had elapsed from the time of the fatal shooting until he was called over the telephone by appellant. Neither Mr. Reagan nor his wife, both of whom were witnesses, testified in regard to the length of time elapsing or the circumstances attendant upon the calling of Dr. Bedford, and under the record before us we can not say that the statement was made under circumstances which would bring it within the well known rules governing res gestae declarations. However, on another trial the court can be governed as the facts may then develop.

The only other bill of exceptions complains of the action of the court in refusing to order, after adjournment of court, the knife to be sent to this court as an exhibit. It appears that appellant introduced in evidence the knife he claimed was found near the body of the deceased, and which he said deceased was advancing on him with when he first shot. On the trial of the case appellant did not have the knife described by any witness, and seeks to cure this omission by having the knife sent to this court. The court in approving this bill attaches to it an explanation of considerable length, and we do not deem it necessary nor proper here to copy the explanation. Suffice it to say, this would present no ground for reversal, as this is a matter within the discretion of the trial judge, and if appellant was of the opinion he abused his discretion, he could have stated the circumstances in application to this court, request-

ing that we order the knife sent to this court, and if his application justified us in so doing we would have made such an order. And under the record before us there was no error in the court refusing to charge on presumptions arising from the use of a deadly weapon, if one was in the hands of deceased.

These are all the bills of exception in the record, but in the motion for new trial appellant devotes some thirteen typewritten pages in the transcript to a criticism of the court's charge, taking up each paragraph separately and attempting to point out some error therein. As to the charge on murder in the first degree, it is drawn in language frequently approved by this court, but if this were not true, as appellant was convicted of murder in the second degree only, such matters would present no ground for reversal of the case.

The charge on murder in the second degree is not subject to the various criticisms leveled at it by appellant. It, too, is drawn in language frequently approved by this court. Puryear v. State, 56 Texas Crim. Rep., 231; Davis v. State, 57 Texas Crim. Rep., 545, 124 S. W. Rep., 104; Pratt v. State, 59 Texas Crim. Rep., 167, 127 S. W. Rep., 827, and Branch's Crim. Law, secs. 425 and 426. The contention that this charge is subject to the same objections as the charge in the case of Roberts v. State, decided recently but not yet reported, is not well taken. It is true that the portion of the charge defining murder in the second degree is the same in this case as in the Roberts case, but the Roberts case was not reversed because of any error in that part of the charge defining murder in the second degree. This definition has always been approved by this court. (For a citation of authorities, see Branch's Crim. Law, sec. 426.) The error in the charge in the Roberts case was in applying the law to the facts in the case, and in which his conviction for that degree was authorized. In that case, in applying the law, the court instructed the jury that "if they believed beyond a reasonable doubt the defendant, with implied malice, *and not in defense of himself,* shot and killed deceased, he would be guilty of murder in the second degree." The court held that inasmuch as the court so instructed the jury and in that part of the charge used the words "and not in defense of himself," he should also have instructed the jury, "and not under circumstances reducing the offense to manslaughter as hereinafter defined," as manslaughter was in the case, and a failure to do so was prejudicial error. In this case no such omission occurs in the charge applying the law. The court instructed the jury as to the facts that would authorize a conviction, and stated: "And not in defense of himself, and not under circumstances which would reduce the offense to manslaughter, did unlawfully, with implied malice, shoot and thereby kill," etc.

The only serious questions in the case arise over the charge of the court in presenting the issues of manslaughter and self-defense. Mrs. Reagan and appellant testify, as do all the witnesses for the State and defendant, to friendly relations existing between deceased up to and

including the Sunday before the homicide, which occurred on Saturday. However, they testify that on that day Mr. Reagan turned out some cattle, and deceased became angry, and that on Thursday and Friday Webb, Moss and others brought a message to him from deceased in which deceased threatened to take his life. The record is left in this way, the State not introducing Webb nor Moss to disprove such messages and threats, and the defendant not offering them as witnesses in support of himself and wife. Appellant and his wife further say that deceased came along the public road in front of their house, called appellant out, cursed and abused him, calling him a son-of-a-b—h, and using other abusive epithets, etc. That Mrs. Reagan went to the gate and protested and asked deceased to leave, saying, "Surely you did not send Joe that word." Deceased replied to her, "Yes, I sent him that word, and he is a son-of-a-bitch." That her husband then called for her to get his gun, but she did not do so. Then, according to defendant and his wife, defendant secured an ax handle, when deceased left. She says that in about forty minutes thereafter, while she was lying on the bed, her husband remarked that Jestice was coming back, when she got up and went to the door, and deceased came in about two or three steps inside the gate, when, to use her own language, the difficulty occurred in the following manner: "My husband said, 'What in the hell are you coming back here for, Jestice?' Joe had gotten his gun in the meantime, and had it down by his side, and Mr. Jestice said, 'I am coming back here to see if you can talk twice this morning.' And Joe says, 'Go on off, Mr. Jestice, go on off, I don't want to have any trouble with you.' And he just kept insisting on him going on off. I don't know hardly what Mr. Jestice was saying during that time, but he was cursing my husband all the time, and Joe walked out toward him, and Mr. Jestice went backing out of the yard gate, and my husband went on out to the gate. Mr. Jestice kept backing out of the gate, and they kept on, and I got up just as Mr. Jestice backed out of the gate, and I went out in the yard and says, 'For God's sake, Mr. Jestice, go on and let's not have any trouble.' And Mr. Jestice says, 'You go in the house with your bastardly brats.' My children were out in the yard with me. When Jestice said that my husband told him to go on and not have any trouble, and Jestice started like he was going home, and then he turned and ran at Joe with a knife, and Joe shot him." This testimony may be said to present fairly defendant's contention, and under it he insists that the court should have charged not only that insulting words and conduct to the wife was adequate cause to produce an offense of manslaughter, but if insulting words are shown then the law presumes that anger, rage, etc., were produced. This is not the law, and the court did not err in not so instructing the jury. It is right and proper for the court to charge the jury as a matter of law that insulting words and conduct toward's one's wife is "adequate cause," but it is a question of fact in each case for the jury to decide whether or not this adequate cause does in fact produce that degree of anger, rage or resentment as to render

the mind incapable of cool reflection. However, appellant insists that the other facts and circumstances testified to might be adequate cause to produce anger, rage, etc., sufficient to render the mind incapable of cool reflection, and that this was not properly presented to the jury in the court's charge, and in this we are inclined to think he is correct. Appellant and his wife testify to threats being communicated; to facts which would tend to show a condition of affairs occurring in the morning at the first meeting which would arouse animosity in any man, and yet at this meeting appellant only drove him away, or compelled him to leave, saying as he did so, "I will meet you with a gun," if appellant and his wife are to be believed. All these facts and circumstances testified to by appellant and his wife were sufficient to raise the issue of adequate cause, and sudden passion from such cause, and should have been properly submitted to the jury. The court in a measure did do this, but limited the provocation to such as arose at that time. It is the law of this State that the provocation, on this phase of the case, must arise at the time of the homicide, yet the jury in view of the "provocation" then occurring should be instructed that in passing on whether or not this provocation was sufficient to produce that degree of anger or rage as to render the mind incapable of cool reflection, where there was previous provocation as in this case, that in passing on this question they should consider such previous provocation, threats, etc., if any, in determining whether or not the provocation occurring at the time was sufficient to produce that degree of anger, rage, or resentment as to render the mind incapable of cool reflection, and did in fact produce such state of mind. This the charge did not do, and this error is emphasized by the court instructing the jury: "Insulting words or gestures, or an assault and battery, so slight as to show no intention to inflict pain or injury, are not deemed adequate causes." In this case there is no evidence calling for this charge. There is no evidence that deceased was guilty of an assault and battery of any character, slight or otherwise; there is no evidence that he made an assault so slight as to show no intention to inflict injury, for if under the testimony in this case deceased did start at defendant with a knife, any person would have reasonable grounds to believe that he did intend to injure him. Again, that part of this paragraph which says insulting words or gestures are insufficient to produce adequate cause is not applicable to this case. As an abstract proposition of law this statement may be said to be correct and in a case where all that was shown was some insulting words and gestures and nothing more, it would be proper to so instruct the jury, but in a case of this kind, where the defendant's theory is that he was sent insulting communications and threats, and when he paid no attention to them deceased came to his home and in the presence of his wife used all character of vile language; left with the threat that he would get a gun, coupled with the further fact that he did return, come into his yard and repeat the vile and abusive language, even if no act is done, or the facts would not justify him, yet such facts and circum-

stances may be adequate cause under article 1130 of the Penal Code, and if the jury should so find, and further find that cause did produce anger, rage or resentment to such an extent as to render the mind incapable of cool reflection, the offense would be of no higher degree than manslaughter.

There are two theories in this case: the State's theory is that deceased at the time of the homicide did not curse appellant, nor use any improper language to his wife; that he was going along the road when appellant shot him, and the State's testimony is ample to support that theory; the defendant contends, as above stated, that deceased was guilty of such conduct, and came into his yard. The court instructed the jury that appellant would have the right to use all necessary force to expel one from his premises, but added, "Defendant had no right to eject deceased from the public road." There is no evidence calling for this latter qualification. If the defendant's theory of the case is the correct one, deceased had entered his premises, and if the jury so found, it would be a proper question to submit to the jury, whether he used more force than under the circumstances was reasonably deemed necessary. The State's theory was that as deceased was passing the house appellant stepped out and shot him. There is no evidence that appellant had demanded or requested that deceased not pass his house; there is no evidence that there was any question of deceased's right to use the road, or effort made to eject him from the road, and appellant's criticisms of that portion of the charge are well founded.

Again, the court should not combine the right of self-defense from real or apparent danger, and the right to defend one's possession of his property and eject an intruder therefrom. Separate and distinct charges should be given upon these two separate and distinct phases of the law. In a case where one seeks to justify on the ground of protecting his property and ejecting an intruder therefrom, it is right and proper in the charge to limit his rights to the use of such force as was necessary or apparently necessary under the circumstances.

On the other hand, where one seeks to justify his acts on the ground that a person had threatened his life, and turned and ran at him with an open knife, his right to defend should not be burdened with a charge on the use of more force than was necessary, but a clear-cut charge on his right to defend from real or apparent danger should be given.

Appellant and his wife by their testimony inject into the case self-defense from three separate and distinct viewpoints: First, the right to protect their property and eject a trespasser from their premises. In this event the jury should be instructed that he could use no more force than was necessary or apparently necessary to accomplish that purpose, but this issue should not be presented as to the other two phases. Secondly, the right to defend from an attack or apparent attack threatening life or serious bodily injury; and, thirdly, the right to defend in the light of threats which they state had been communicated to them, and the conduct of deceased at the time, applying the law of reasonable

doubt to each, and each given in separate and distinct paragraphs. In view of what we have said, we do not deem it necessary to discuss the other grounds assigned in the motion for new trial, for the court, from a perusal of this opinion, can so frame his charge as not to be subject to just criticism. We have discussed this case mainly from the standpoint of the testimony offered in behalf of the defendant, as he was entitled to have the issues raised thereby submitted to the jury in an appropriate charge. However, we may say that the testimony offered in behalf of the State would fully and amply support a verdict not only of murder in the second degree, but if true of murder in the first degree, and in view of a change in the law, if this case should not be tried before July 1st, we would suggest that the court in instructing the jury, instruct them that they would not under the new law be authorized to assess the penalty now assessed against murder in the first degree, but the penalty should be submitted fully as is now applicable to murder in the second degree.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*