H. W. HAYNIE v. THE STATE.

No. 11959. Delivered November 20, 1929.

The opinion states the case.

*Lockhart, Garrard & Brown* of Lubbock, for appellant.

*Dennis Zimmermann* of Tulia, and *A. A. Dawson* of Canton, State's Attorney, for the State.

HAWKINS, JUDGE.—The killing of John Lain occurred at Stanton in Martin County. Venue was changed to Midland County where a trial resulted in conviction for murder with penalty of fifteen years in the penitentiary.

The evidence reveals the following facts. Appellant operated a cafe in the town of Stanton. On the day of the killing deceased came into the cafe about noon. He was inquiring for and cursing one Arthur Woody in very obscene language; Woody was not in the cafe; appellant requested deceased not to use such language in the presence of his wife and daughter and insisted that he leave the cafe; deceased seemed to take umbrage at this, thinking appellant was taking Woody's part. Other persons present induced deceased to leave; in about thirty minutes he returned and he and appellant engaged in a fight. Witnesses present seemed unable to say who struck the first blow in this encounter. Appellant claimed that deceased was the aggressor; during the fight appellant struck deceased a blow on the head with a hammer and appellant was severely choked by deceased; bystanders separated them and put deceased out of the cafe. After having the wound on his head made by the hammer dressed by a physician deceased again returned to the cafe and ordered a cup of coffee; he seemed to think appellant

had struck him with a pistol, but was told by parties present that he had been struck with a hammer; he was urging appellant to come outside and fight him; the sheriff had been called and reached the cafe while deceased was there on this visit; deceased's wife was with him and was urging him to go with her to the hotel where they lived; the sheriff told him unless he went away and stayed it would be necessary to lock him up. Appellant had requested the sheriff to keep deceased away from the cafe. He left with his wife but in about thirty minutes again returned. It was on this occasion that the killing occurred. State's witnesses gave testimony which would warrant the conclusion that deceased sat down on a stool at the counter and was looking at a newspaper spread out before him and that appellant shot him without any demonstration having been made by deceased; appellant's evidence was to the effect that deceased reached across the counter, caught appellant in the collar and pulled him toward deceased, who at the same time made a movement with his hand in his sweater pocket which led appellant to believe that deceased was going to shoot him, whereupon appellant began to fire. Deceased had seven wounds on his body, some evidently made by the same bullet. Five or six shots were fired, all by appellant. Deceased was a much heavier and stronger man than appellant who professed to be afraid of deceased. During one of deceased's visits to the cafe some money transaction occurred between appellant and deceased regarding a check which deceased had. Whether appellant had given the check originally or indorsed it is somewhat confused; at any rate appellant paid deceased some money in the transaction, and deceased appeared to be satisfied with that adjustment of the matter.

A point raised in the ninth bill of exception may have been abandoned by appellant but in view of another trial we advert to it briefly. When the case was called for trial in Midland County appellant claimed that the court there was without jurisdiction on the ground that the court records in Martin County—where the case originated—failed to show that the indictment was returned into open court by a grand jury. It seems to have been admitted that the court minutes of Martin County were then silent on the subject. The case was passed for the term. At the next term of court held in Martin County a nunc pro tunc order was entered on the minutes showing proper presentment of the indictment, and in a supplemental transcript such order was sent to Midland County. It was not claimed in the first instance that no indictment had been

returned but only that the minutes of the court in Martin County failed to show it. The state insists that it was a matter which should have been presented in limine in Martin County before the order changing the venue was made. The state's position is sustained by the following authorities. Caldwell v. State, 41 Texas 86; Loggins v. State, 8 Tex. Cr. App. 434; Barr v. State, 16 Tex. Cr. App. 333; Serrato v. State, 74 Tex. Cr. R. 413, 171 S. W. 1133; Vasquez v. State, 76 Tex. Cr. R. 37, 172 S. W. 226.

Complaint is made in bill of exception number seven because the state was permitted to introduce in evidence a blood stained sweater worn by deceased at the time of the killing. When objection was interposed counsel for the state remarked that "the only thing we are offering it for is to show the nearest hole to the pocket. The pocket really is the main thing we are offering." To understand the relevancy of this evidence it is necessary to revert to appellant's testimony. He claimed that deceased reached over the counter, caught appellant in the collar with his left hand and had his right hand in his sweater pocket, and raised that hand up and forward, still having it in the pocket; that it was then appellant began firing, thinking deceased had a pistol in his pocket. Appellant claimed that deceased never removed his hand from the pocket during the firing of the five or six shots, and that he still had it in the pocket when he was lying on the sidewalk after the shooting. It was the state's claim that deceased made no demonstration whatever. There was a bullet hole in deceased's right hand. If the shooting occurred under the circumstances detailed by appellant there must of necessity have been a bullet hole in the sweater pocket. There was none. The sweater itself was the best evidence to refute appellant's testimony that deceased kept his right hand in his pocket during the entire shooting. It is permissible to introduce bloody clothing worn by deceased when they serve to solve some question and throw light upon a matter connected with the proper solution of the case and aid the jury in arriving at the very truth of the matter. Many authorities are collated under Sec. 1855, Branch's Ann. Tex. P. C. See also Reagan v. State, 70 Tex. Cr. R. 498, 157 S. W. 483; Trigg v. State, 99 Tex. Cr. R. 376, 269 S. W. 782; King v. State, 104 Tex. Cr. R. 583, 286 S. W. 230.

This killing occurred prior to the amendment of the statute defining murder (Acts 40th Leg. Chapter 274, page 412) and upon the trial it became necessary for the court to submit the issue of

manslaughter.   In defining such offense the court used this language:

"Manslaughter is voluntary homicide, committed under the *immediate influence of sudden passion* arising from an adequate cause, but neither justified nor excused by law."   (Italics ours.)

No further explanation is made of the term "under the immediate influence of sudden passion," save to inform the jury that the act must be directly caused by the passion arising out of the provocation and that the passion referred to was either anger, rage, sudden resentment or terror, which rendered the mind incapable of cool reflection.   The court went no further in defining "adequate cause" generally than to tell the jury it meant such as would commonly produce the passion mentioned in a person of ordinary temper. Timely written objection was presented upon the ground that the charge was too restrictive in that it nowhere instructed the jury that in determining whether adequate cause existed they should take into consideration "any condition or circumstance or combination of circumstances taken together or alone" which was capable of creating the passion mentioned, and that nowhere was the jury told that "they should take into consideration all the facts and circumstances in evidence in determining the existence of adequate cause."   The court did not amend his charge in response to the objections.   The advisability of some elaboration of the instructions seems apparent from the record.   While the jury was deliberating they came into court and propounded the following written question to the judge.

"Must the action of the defendant in killing the deceased be committed in anger or rage caused by an immediate action or words of the deceased, or may the defendant be charged with manslaughter when the killing was done in anger aroused and kept up by actions and words of the deceased covering a period of several hours, during which time defendant never completely cooled off.   In other words what do the court's words 'under the immediate influence of sudden passion,' cover?"

The judge gave no answer to the inquiry; neither the state nor appellant asked for further instructions.   Doubtless appellant felt it unnecessary to do more than stand on the objections already made. The question asked by the jury indicated that they were seeking information upon the very point omission of which from the charge was the subject of complaint.   Where the testimony shows a number of conditions or circumstances tending singly or collectively to constitute adequate cause, the charge should authorize the jury to look

to all the facts and circumstances in the case in determining whether adequate cause existed. The failure of the court to so inform the jury under the facts of the present case demands a reversal. Reference is made to the facts leading up to the killing which have been stated in the beginning of this opinion. The difference between deceased and appellant had extended over several hours; deceased had made some four or five trips to appellant's place of business; he had been taken out and warned to stay away by the officers; appellant's testimony and that of many other witnesses indicate that his conduct on these occasions was calculated to arouse appellant's anger and resentment. Surely the jury ought to have been given to understand that these things were not to be ignored in determining the issue of manslaughter. So many cases may be found upon the point that we refer to them as grouped under Sec. 2049, Branch's Ann. Tex. P. C., and in notes under Art. 1246 and 1249, Vernon's P. C., Vol. 2.

Bill of exception number five reflects the following occurrence. A witness who heard the shooting went immediately to the scene, and over objection was permitted to testify that deceased, among other things, said, "I went after a cup of coffee." Objection was urged on the ground that it was evidence of an undisclosed motive on the part of the deceased, it not being shown that appellant knew why deceased came into his place of business. Upon one of deceased's prior visits he had ordered a cup of coffee but there is no evidence showing that he had done so upon the occasion of his last visit. What deceased said was not a statement as to anything occurring during the shooting but was an explanation of his presence there at the time. Appellant claimed that he was acting in self-defense, his conduct being predicated in part at least on what deceased had done on his prior visits to the cafe, and upon appellant's claimed belief that deceased had returned to renew the trouble. It is not for us to determine the truth of appellant's theory; the issue was made by the evidence. Where accused charged with murder claims to have acted in self-defense the rule is that if he knew or had been informed prior to the homicide of the motive or purpose of deceased proof of same is admissible if it tends to solve any issue in the case; but accused can only be bound so far as matters reasonably appeared to him at the time he acted; proof of deceased's reason in being where he was, or in going to the scene of the homicide, if unknown to accused, is not admissible against him where it tends to affect his defensive theory. Many cases may be found announcing the foregoing prin-

ciple; a number of them are noted in Archer v. State, 98 Tex. Cr. R. 91, 263 S. W. 305. Surely under the authorities the state would have been prevented from proving by a witness that deceased said just before his last visit to the cafe that he was going there for coffee, or for any other innocent purpose of which appellant was uninformed. Could the state make proof of the same fact by the declaration of deceased even though made within a few minutes after the homicide, if appellant had no knowledge of it when he fired the shots? The effect of impinging on his self-defense claim would be the same in either event. The question seems to be answered in the negative in positive terms by Wooley v. State, 64 S. W. 1054; Gray v. State, 47 Tex. Cr. R. 375; Clark v. State, 56 Tex. Cr. R. 293, in which the point is discussed at some length by Judge Ramsey. The holding in all of them is that an exception to the rule admitting acts and statements of the injured party as res gestae is that proof of such acts or statements when unknown to accused which tends to impair his defensive theory is inadmissible in those cases where he is to be judged from his own standpoint; accused in such case can not be bound by the undisclosed purposes and motives of his adversary. It follows that the court was in error in admitting proof of deceased's statement reflecting his purpose in going into appellant's place of business at the time of the killing.

On motion for a new trial appellant complained that after retirement to consider the case the jury had received evidence from some of the jurors regarding appellant's character which had not been put in issue. The evidence heard upon this phase of the motion presents a rather serious question. We think, however, it is unnecessary to discuss the matter as it will not arise upon another trial and because the judgment must be reversed for the reasons already given.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*