CHARLIE LANGFORD V. THE STATE.

No. 15548.   Delivered March 15, 1933.
Reported in 58 S. W. (2d) 115.

The opinion states the case.

*McGaugh & Darroch,* of Brownwood, *Homer C. DeWolfe,* of Austin, and *G. A. Walters,* of San Saba, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State

HAWKINS, JUDGE.—Conviction is for murder, punishment assessed being ninety-nine years in the penitentiary.

Appellant was indicted for killing his father, Rufe Langford. It was charged in counts one and three that the killing was accomplished by striking deceased with some instrument or weapon to the grand jurors unknown; and in the second count it was charged that the killing was done by some means and manner to the grand jury unknown.

The prosecution introduced in evidence the statement made by appellant on the night of the fatal injury as to how deceased met his death. This statement was made at the scene of the injuries, and was in substance that appellant had stopped his car to fix a puncture in the left rear casing, and his father, who was with him in the automobile, got out, walked a few steps down the road and laid down in front of the car; that appellant jacked up the rear axle, fixed the puncture, and called to his father that he was ready to go, and pushed the car off the jack; that the car went into gear, started firing, ran down the hill, and over and upon his father, who became fastened thereunder; that appellant was unable to extricate his father from beneath the car; that he got in the car and drove it off of his father; that appellant was unable to put his father in the car on account of his size and weight; that the fatal injuries to deceased were caused by the car when same accidentally ran over and upon him; that appellant went to town, obtained assistance, and had the officers and doctors notified. Appellant went back to the place of the injury where said statement was made to a number of witnesses who testified on the trial. It was the uncontradicted evidence that deceased was suffering from some physical ailment which caused him to lie down or recline to secure more comfort. From the statement of appellant in connection with points indicated by him to witnesses at the scene of the accident it appeared that deceased must have been dragged several feet under the car. Having introduced the aforesaid exculpatory statements, the state realized that it was bound thereby unless it could prove their falsity. As tending to do this the state proved by a physician that in his opinion the wounds found on the head of deceased were not such as could have been sustained by being dragged under an automobile; also that deceased was a large man, ten or twelve inches through the chest, and therefore it was improbable that he could have been run over by a car such as the one used by appellant; also that at the place where the injuries were sustained the condition of the road was such that it would have

shown signs of anything being dragged and that no such indications were discovered, and that there was no dirt, gravel, or grit in the wounds on the head of deceased; also that witnesses examined the rear casings of appellant's car and found that the right rear casing showed to have been recently removed, whereas the left casing showed to the contrary, the tube being stuck to the casing and the casing rusted to the rim, it having been explained by appellant that it was the left rear casing which was changed by him immediately before the car ran over deceased.

Bill of exception number two brings forward complaint to the refusal of the court to permit appellant to introduce before the jury the clothing, especially the coat and trousers worn by deceased at the time he sustained the injuries which resulted in his death. The bill is rather lengthy. Appended thereto is a long qualification of the trial judge. It is destroyed by a certificate over the judge's signature that the qualification was excepted to. Under such circumstances the bill must be considered independently. Dailey v. State, 106 Texas Crim. Rep., 99, 291 S. W., 242; Dowd v. State, 104 Texas Crim. Rep., 480, 284 S. W., 592; Stapleton v. State, 107 Texas Crim. Rep., 596, 298 S. W., 578. The bill sets out the statement made by appellant at the scene of the homicide substantially recited in this opinion; it then recites that various witnesses (naming them) had described certain torn places in the coat and trousers of deceased, and gave testimony as to the amount of blood and dirt on them; it is then certified that there was a "discrepancy in the testimony of said witnesses." Appellant offered the clothing of deceased in evidence upon "the ground that there was a dispute in the evidence as to the dirt and blood on said clothing, and a dispute as to the manner in which deceased met his death, and because of the fact that the tears and the blood and dirt on said coat and said trousers tended to illustrate the manner in which the injuries were inflicted upon the deceased, and were the best evidence of their condition as to the extent of the blood and dirt thereon, and the nature and extent and probable cause of the torn places and of the manner in which same became torn and became bloody and dirty, and were corroborative of the defendant's statement and substantiated his statement made to the officers the night of the injury, that the same occurred when the car ran over and upon his father, and in getting the same off of his father; the defendant's statement being to the effect that the deceased met his death accidentally, and the State's theory being that the deceased was beaten to death by the defendant with some blunt instrument."

The state urged as objections to receiving the clothes in evidence that they tended to solve no issue in the case, and that there was no controversy as to the manner in which the injuries were inflicted. The statement of the case heretofore made, we think, shows that there was a controversy as to the manner in which the injuries were received. The whole effort of the state was to combat the truth of the explanation made by appellant at the scene of the homicide. The clothing of deceased had been cut from his body at the undertaking parlor, but otherwise were shown to have been in the same condition as when the body was taken in charge by the officers at the scene of the killing. It has always been held permissible to introduce clothing worn by deceased when they serve to solve some question and throw light upon a matter connected with the proper solution of the case and aid the jury in arriving at the very truth of the controversy. See Branch's Ann. Tex. P. C., sec. 1855, under which many cases are collated. See, also, Reagan v. State, 70 Texas Crim. Rep., 498, 157 S. W., 483; Trigg v. State, 99 Texas Crim. Rep., 376, 269 S. W., 782; Haynie v. State, 113 Texas Crim. Rep., 650, 21 S. W. (2d) 724. Usually the question is raised by objection of the accused when the clothing of deceased are offered in evidence by the state. In Sherwood v. State, 111 Texas Crim. Rep., 453, 14 S. W. (2d) 1029, the clothing of accused tendered by him were held admissible as throwing light on the transaction out of which the prosecution grew. An examination of the statement of facts in the present record shows that the condition of the clothing as to dirt on them, and torn places, was a matter of inquiry from many witnesses. Apparently it was regarded as important. The witnesses were not altogether in accord as to the quantity of dirt on the clothing, nor the location or extent of the torn places in the garments. Certainly the clothing of deceased would have shed light on some of the issues the jury were called upon to determine, the most important of which was how the tears and dirt came to be present. We can not escape the conclusion that the learned trial judge fell into error in excluding the clothing from the jury.

An effort on the part of the state to show motive for appellant to kill his father brought about the complaint found in bill of exception number seven. The justice of the peace was asked if he knew the state of feeling between appellant and deceased prior to and at the time of deceased's death. Objection was interposed on the ground that the question was too indefinite and did not apprise appellant whether the incident proposed to be proved was too remote. The jury was retired and in its

absence it was developed from the witness that more than seven years previously appellant had put deceased under a peace bond. It was upon this incident the witness predicated his opinion that the feeling between appellant and deceased was unfriendly. The witness further said that at the time deceased was put under the peace bond he had threatened appellant's life, and was hunting him with a Winchester rifle. Appellant renewed his objection to the witness giving such testimony before the jury because the circumstances were such as showed a lawful right on the part of appellant to put deceased under the peace bond, and were not sufficient to show ill feeling on appellant's part, and were too remote in point of time. It appears from the statement of facts that when the witness was testifying before the jury regarding this same incident he said that when the matter of putting deceased under a peace bond occurred "he (referring to deceased) was generally considered at that time to be a little off his mind." The bill further shows that at the time the fatal injuries were received appellant was living with deceased and was taking him back and forth from home to town for medical treatment. The prosecuting attorney announced to the court that the state would connect said remote transaction by showing that the state of ill feeling existed between appellant and deceased as late as December next before the homicide, which occurred in February. The purported ill feeling in December was predicated on the testimony of a brother of deceased, and was to the effect that appellant and his father were "fussing" because appellant permitted a nephew to take and use an automobile which belonged to deceased, and that in the course of the conversation appellant told his father he could not have his way all the time. The court overruled appellant's objections and permitted the witness to give before the jury the testimony heretofore indicated regarding the peace bond, and therefrom, to give his conclusion that ill feeling on appellant's part toward his father existed. In our opinion this testimony should have been excluded. It was not only remote, but the act of appellant in placing his father under a peace bond seems to have been justified under the circumstances then existing. There was no contention that his conduct was spiteful or done without cause. The conduct of deceased which brought about the peace bond might show bad feeling on his part toward appellant, but the latter's act was a resort to legal means instead of violence, and, to our minds, evinces no malice toward his father. Davis v. State, 65 Texas Crim. Rep., 271, 143 S. W., 1161; Woodward v. State, 42 Texas Crim. Rep., 188, 58 S. W., 135.

Bill of exception number thirteen complains of language used by counsel for the state in argument. The trial court thought it improper, and directed the jury not to consider it. Notwithstanding this instruction, appellant brings forward complaint on the ground that the argument was so obviously harmful the court could not remedy the situation by an attempted withdrawal. The bill presents a serious question. Surely the argument will not be repeated if another trial is had, and, in view of a reversal on other grounds, we do not further discuss the point.

Other bills of exception appearing in the record are not thought to present error.

For the reasons heretofore given, the judgment is reversed and the cause remanded.

*Reversed and remanded.*