P. C. PORTER V. STATE.

No. 24132. December 22, 1948.

Hon. N. L. Dalby, Judge Presiding.

*B. F. Edwards,* of Clarksville, and *O. B. Fisher,* of Paris, for appellant.

*Robert Gooding,* County Attorney, of Clarksville, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Appellant was indicted for murder of Willie Lee Stearman. He was found guilty of murder without malice by a jury, and his punishment assessed at five years in the penitentiary.

The killing grew out of a dispute between appellant and W. J. Stearman as to the location of a line fence. In the same difficulty appellant also killed W. J. Stearman, the father of Willie Lee Stearman.

The killing occurred on the 18th day of October, 1947. In March, 1947, W. J. Stearman acquired from Tom G. Davis title to 147 acres of land which adjoined land already owned by Stearman. This 147 acres had at one time belonged to appellant. The disputed line was that between the 147 acres and the land already belonging to Stearman. Appellants claimed no title to any part of the 147 acres, but asserted a temporary interest therein under an agreement or contract between appellant's wife and Stearman, that said wife was to have the use of a garden

and tomato "patch toward the northeast corner of said tract, rent free for the year 1947."

On the day before the killing appellant built a fence on the disputed line. The fence was not on the line as claimed by Stearman. On the morning of the killing Stearman went to see the County Attorney who advised him that if the fence was on his (Stearman's) land, he had a right to tear it down, and to "use what force he though necessary to throw all trespassers off his property." Later on the same morning appellant went to see the County Attorney who advised appellant of what had been told Stearman. Both Stearman and appellant returned to their respective homes. Appellant with his wife went to Stearman's house and talked to him about the matter, and was told by Stearman that he intended to tear the fence down. Appellant remonstrated with Stearman about it, but to no avail, and returned to his own home. Stearman and his son immediately repaired to the disputed fence and did tear it down. As they were leaving the place, appellant approached. Stearman and his son returned on the run, both being armed with pistols. The evidence is in sharp dispute at this point as to who fired the first shot, appellant claiming that he was stooping down, unfastening a wire gate or gap near the disputed fence, when deceased fired at appellant. The pistol which Willie Lee Stearman had showed to have been fired twice. The one with which W. J. Stearman was armed had not been fired. Appellant claimed not to have fired until he had been fired at and struck. The State's evidence was to the effect that appellant was told to not unfasten the wire gate, and that he commenced firing first.

The foregoing very condensed statement of the facts is sufficient predicate for a discussion of the points deemed vital to a proper disposition of this appeal, supplemented perhaps by such additional facts as may be called for in disposing of some particular bill of exception.

As a limitation on appellant's right of self-defense the trial court charged on provoking the difficulty. Appellant excepted to such instruction on the ground that such issue was not raised by the evidence. It would serve no useful purpose to prolong this opinion by setting out in detail the evidence which is thought to support such an instruction. In determining the question, the State's evidence must, of course, be looked to. Considering it from that standpoint, we think the evidence raised the issue and justified the trial court in giving such instruction.

The form of the charge on provoking the difficulty was also excepted to. This instruction was almost a verbatim copy of the charge on that subject given in Norwood v. State, 135 Tex. Cr. R. 406, 120 S. W. (2d) 806, which was approved by this court.

It was appellant's contention that after he and his wife returned to their home after their visit to Stearman's, appellant's wife told him that Stearman wanted the fence put back where it had been before appellant moved it, and that he went down to the scene of the difficulty to place the fence back where Stearman insisted it belonged: that the reason he took his pistol with him was because he was afraid the Stearmans would see appellant down there and would come down with their guns and kill appellant before he could explain what he was trying to do.

Among the objections to the court's instructions timely and properly filed was for failure "to charge on the right of the defendant to arm himself in a peaceable manner and while so armed going on a peaceful mission to settle the trouble between him and W. J. Stearman for the reason that the evidence discloses that the defendant armed himself and went to the scene of the difficulty for the only purpose of removing the wire and replacing the fence to a place requested by the deceased, and that he carried the gun only for the protection of his person and life until he could make known to them his purpose to place the fence where Mr. Stearman had asked that it be placed, if they should come upon him while has was engaged in the undertaking." The court should have responded to this exception.

It has been the consistent holding that where an accused is by the court's instructions given the unlimited right of self-defense there is no necessity to charge on the effect of him going armed to the place of the difficulty. See Sec. 1950, p. 1091, Branch's Ann. Tex. P. C., and cases noted under said section, and later cases of Chappell v. State, 124 Tex. Cr. R. 187, 61 S. W. (2d) 842; Kerr v. State, 134 Tex. Cr. R. 368, 115 S. W. (2d) 672; Jamison v. State, 141 Tex. Cr. R. 349, 148 S. W. (2d) 405. On the other hand, it is equally well settled that if the court's instruction limits accused right of self defense by a charge on provoking the difficulty, as was here done, then the jury should be advised in a proper instruction under the facts that accused's right of self-defense would not necessarily be abridged by the fact that he carried arms to the scene of the difficulty. See 22 Tex. Jur., p. 1096, Sec. 309, and cases cited under Note 9 on page 1098; also Frazier v. State, 100 Tex. Cr. R. 157, 272 S. W. 454; Dunne v. State, 102 Tex. Cr. R. 435, 278 S. W. 201; Couch

v. State, 103 Tex. Cr. R. 188, 279 S. W. 821; Clark v. State, 99 Tex. Cr. R. 80, 268 S. W. 465; Moore v. State, 96 Tex. Cr. 492, 258 S. W. 476.

Closely related to the question just discussed is the subject made the basis of complaint reflected by bills of exception numbers nine and thirteen. Appellant proffered testimony from his wife that after they returned from Stearman's appellant said, "Let's put up the fence where he told us to," and by his daughter Margie appellant offered to prove that appellant told her to go with him and help him take up the fence constructed by him and place it back where W. J. Stearman desired it. The bills recite that these statements were made not more than five minutes before the shooting and at appellant's house, not more than three hundred feet from the scene of the killing; that appellant accompanied by his daughter, went directly to the scene of the homicide. It is insisted by appellant that his words were res gestae, and explanatory of his acts, showing the state of his mind, and that his mission was a peaceable one. Upon objection by the State the proffered evidence was excluded. The principle involved has been a number of times considered by this court. See Brumley v. State, 21 Tex. App. 222; Clark v. State, 56 Tex. Cr. R. 293; 120 S. W. 179; Williams v. State, 112 Tex. Cr. R. 482; 17 S. W. (2d) 1057; Wooley v. State, 64 S. W. 1054; Russell v. State, 11 Tex. App. 288; Williams v. State, 4 Tex. App. 5; Koller v. State, 36 Tex. Cr. R. 496; Haynie v. State, 113 Tex. Cr. R. 650, 21 S. W. (2d) 724; Stapleton v. State, 107 Tex. Cr. R. 596, 298 S. W. 298. To review these cases would extend this opinion to unpardonable length. The consensus of the opinions seems to be that what is said explanatory of an act and contemporaneous therewith is a verbal act and generally provable where the act in question is material to some issue in the case; subject, however, to the exception that if the act or statement be by the deceased or injured party, and unknown to a defendant, and which impinges on a self-defensive issue, the statement is not provable, because the defendant acts from his standpoint, and can not be affected by things of which he has no knowledge. Giving application to the recognized rules, we think the court fell into error in excluding the evidence in question.

Bill of exception number sixteen reflects that while the State was examining appellant as a witness he was asked the following question:

"Isn't it a fact that you were convicted on the first day of June, 1940, in another case of assault with a deadly weapon in North Carolina,"

The question was objected to upon various grounds, one being that the inquiry was as to an offense which was a misdemeanor and not involving moral turpitude, and therefore not provable to discredit appellant as a witness. The objection was overruled. The bill fails to show what the answer of appellant was to the question. However, we observe that the court instructed the jury that the evidence as to prosecution and conviction of appellant in "some other case or cases" was not original evidence, and could be considered only as aiding the jury, if it did, in determining appellant's credibility as a witness in weighing his testimony, and for no other purpose. The bill is defective in not setting out the witness' answer. However, in event of another trial the State should not ask such question. For the purpose of impeachment prior convictions must be for felonies, or for misdemeanors involving moral turpitude. Assault with a deadly weapon is not ipso facto a felony. Art. 1147, subdivision 8, P. C. Not all aggravated assaults involve moral turpitude.

The record contains many other bills of exception. They have all been examined. Some relate to things which will not occur upon another trial, hence are not discussed, and others are not thought to present serious questions.

For the errors pointed out, the judgment is reversed and the cause remanded.