## JESSE IVORY v. THE STATE.

### No. 3016. Decided May 17, 1905.

**1.—Assault to Murder—Charge of Court—Cooling Time.**

See opinion for facts which might require the court to charge on the question of cooling time.

**2.—Same—Antecedent Facts—Provocation—Charge of Court.**

In charging on provocation by a blow on defendant causing pain or bloodshed, the jury should be instructed that they were authorized to look to all antecedent facts and circumstances between the parties tending to illustrate or intensify the provocation.

**3.—Same—Lower Grades of Assault—Charge of Court.**

Where in a prosecution for assault to murder, there was evidence, although weak it may have appeared to the court, that the defendant shot to scare prosecutor, the court should have charged on the lower grades of assault.

**4.—Same—Deadly Weapon—Presumption of Law—Charge of Court.**

Where the evidence showed, in a case of assault to murder, that the prosecutor was coming at defendant with a butcher knife, the court should have

charged that if the jury believed that the same was a deadly weapon, the law presumed that the prosecutor intended to take defendant's life or inflict some serious bodily injury upon him, and under such circumstances he would be justified in shooting prosecutor.

5.—Same—Reasonable Fear of Death—Charge of Court.

See opinion for facts which did not require a charge on danger to appellant of a less degree than an attack causing him to have reasonable apprehension of death or serious bodily injury.

Appeal from the Criminal District Court of Harris. Tried below before Hon. J. K. P. Gillaspie.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The following statement taken from appellant's brief is substantially correct: Mike Thompson, the alleged injured party, testified that both parties were working in a restaurant and saloon together, and that the difficulty started over an order appellant had given him for some ham jumbles to be cooked; that he didn't hurry up the order as he had been using the telephone, and appellant asked him, "How about that order of mine?" and he said, "Well your order will come along in time," that appellant then said, "That order has been mighty long in coming," and he replied, "It ain't any longer in coming than that little bill you owe me—you owe me $1.15 now"; that appellant then began to curse and abuse him, and he told appellant he wouldn't stand his abuse and if he didn't quit cursing him he would slap his head off; that about ten or fifteen minutes after that appellant went behind the bar and got a pistol and shot at him twice, neither shot hitting him. That the first shot was fired from a distance of twenty-five to thirty feet and the second shot about half that distance; that he had no weapon, and was in his shirt sleeves, and was standing still when the first shot was fired, that "we got into a kind of scuffle before the shot was fired, when I said I would slap his head off about his cursing and abusing me."

On cross-examination he testified: that he did grab appellant by the collar and tell him he would slap his face off, at which time appellant had not struck him or offered to strike him. That he did not pick up a glass and sling it at appellant, and had no glass in his hand at all; that he did not get a butcher knife off the table and was not advancing on appellant when he shot.

Appellant testified that he had given an order to Thompson for some ham jumbles, and had given the order three times, and after waiting around about an hour spoke to him and said, "it seems to me them ham jumbles is coming a little slow"; that Thompson replied that "Your order is coming about as fast as that $1.15 you owe me." That he told Thompson he would give him the rest of the money this week, and Thompson said "You will pay me right now," that he told him he couldn't, but would pay like he had been doing before; that just at that time Thompson grabbed up a water glass and said, "God damn you, you will pay me right now. That Thompson then grabbed

him by the collar and broke it open, and he got loose from him, and tried to get away, when he threw the glass and hit appellant in the mouth. Appellant then went to get some water, the blood running from his mouth. Thompson then grabbed up a big butcher knife from behind the counter and run out with it, and said he would kill appellant, that he rushed at him with the big knife in his hand and appellant went behind the counter and took the bar-tender's gun, when Thompson came on towards him saying he would kill the black son-of-a-bitch, and appellant shot at him. That he wanted to protect himself as Thompson was coming on him with the butcher knife.

On cross-examination appellant testified: "I didn't shoot any time at Thompson; I shot to scare him"; that Thompson was about ten feet from him when he fired the first shot, and never quit coming until the second shot was fired. That he did shoot at Thompson to keep him from hurting him with the knife.

Officer Woods, for the State in rebuttal, testified, "When the defendant was arrested there was blood on his face." The testimony of this witness and that of Officer Fisher show that appellant was arrested at the time of the difficulty, at the scene thereof.

Emmett Williams, testified for appellant, that he saw Thompson grab him and draw a glass on him.

The evidence shows that both parties were friendly up to the time of the difficulty; that they had drank, shot craps and played poker together, and it is shown that about ten or fifteen minutes elapsed from the beginning of the difficulty until the shots were fired.

Appellant is a negro and Mike Thompson a white man.

*E. T. Branch,* for appellant.—On question of cooling time: Thomas v. State, 42 Texas Crim. Rep., 386; Hayman v. State, 11 Texas Ct. Rep., 486; Mundine v. State, 37 Texas Crim. Rep., 5; Cooper v. State, 12 Texas Ct. Rep., 620. On question of looking to antecedent facts in connection with charge on provocation: Orman v. State, 24 Texas Crim. App., 495. On question of shooting to scare: Wesley v. State, 65 S. W. Rep., 904.

The court should have charged the jury that if they found that Mike Thompson was advancing on appellant with a knife, and that the same was a deadly weapon that the law presumed that the intention of Thompson was to kill appellant. Cooper v. State, 12 Texas Ct. Rep., 620; Teel v. State, 5 Texas Ct. Rep., 574; Hall v. State, 66 S. W. Rep., 783; Scott v. State, 46 Texas Crim. Rep., 305; Paderes v. State, 45 S. W. Rep., 914; Ward v. State, 30 Texas Crim. App., 687; Cochran v. State, 28 Texas Crim. App., 422; Jones v. State, 17 Texas Crim. App., 602; King v. State, 13 Texas Crim. App., 277; Kendall v. State, 8 Texas Crim. App., 569.

The proof shows the knife was a big butcher knife. If this is not sufficient to show that it was a deadly weapon then the court erred in limiting and restricting the right of appellant to defend himself

against an attack, to an attack causing him to have a reasonable fear of death or serious bodily injury. Appellant had the right to defend against an ordinary assault as well. Crawford v. State, 70 S. W. Rep., 548; Price v. State, 10 Texas Ct. Rep., 28; Rea v. State, 10 Texas Ct. Rep., 586; McLendon v. State, 4 Texas Ct. Rep., 69; Collins v. State, 81 S. W. Rep., 300.

The charge of the court is not full enough on the doctrine of apparent danger, and is similar to the charge in Cooper's case, supra. Upon another trial, the charge on appearances of danger should be given.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of assault with intent to commit murder, and his punishment fixed at confinement in the penitentiary for a term of two years; hence this appeal.

In the motion for new trial, a number of exceptions were taken to the charge of the court, and the failure of the court to give instructions upon certain phases of the case. Appellant insists that the court should have charged on cooling time, but it occurs to us from the evidence that this was a continuous transaction, and there was no occasion for the court to give an instruction as suggested. If on another trial it should appear there was an interregnum in the difficulty between the alleged blow with the glass tumbler by prosecutor, inflicting pain or bloodshed on appellant and the final act of shooting, the court might be required to give the charge on cooling time.

In charging on provocation to wit: a blow causing pain or bloodshed, the court should also on another trial instruct the jury that they were authorized to look to all the antecedent facts and circumstances, if any, between the parties, tending to illustrate or intensify the provocation.

Appellant complains that the court failed to instruct the jury on that phase of the case arising from a portion of appellant's testimony, to the effect that he shot to scare the prosecutor. The language of appellant in his original examination was that "he shot at prosecutor," but on cross-examination he stated, "I did not shoot any time at Thompson. I shot to scare him." Appellant contends that the court should have charged on aggravated asasult on this phase of the case, and cites Gatling v. State, 7 Texas Ct. Rep., 16, and Pastrana v. State, decided May 10, 1905. Both of these authorities support appellant's contention; that is, that the court should have charged simple assault on this phase of the case. It may be that the trial judge considered the testimony on this point weak, but in our opinion it was sufficient to have required the charge.

Appellant also insists that the case should be reversed on account of the failure of the court to instruct the jury, if at the time appellant fired at prosecutor, prosecutor was coming at him with a butcher knife,

and they believed that the same was a deadly weapon, the law presumed that he intended to take his life, and under such circumstances he would be justified in shooting prosecutor. This contention appears to be in accord with the authorities. Cooper v. State, 12 Texas Ct. Rep., 620; Hall v. State, 66 S. W. Rep., 785; Ward v. State, 30 Texas Crim. App., 687; Kendall v. State, 8 Texas Crim. App., 569.

We do not believe it was necessary for the court to instruct the jury on danger to appellant of a less degree than an attack causing him to have reasonable fear of death or serious bodily injury. Of course, under given circumstances, the right of self-defense exists against any character of attack; but the evidence indicates, so far as self-defense is concerned that if prosecutor was attacking appellant at the time he fired the shot, with a large butcher knife, it was evidently with the intent to take his life or inflict upon him serious bodily injury, and against this he had a perfect right of self-defense. Of course, against a lesser danger, if the facts had warranted a charge on this subject, he might not have had a perfect right of self-defense, but would be guilty of some character of assault for using excessive force. We do not understand the facts to be such in this case.

For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*