### ALBERT WILLIAMS v. THE STATE.

No. 1580.  Decided February 28, 1912.

**1.—Murder—Charge of Court—Insulting Conduct to Female Relative—Adequate Cause.**

Where, upon trial of murder, the evidence showed that a female friend of defendant, whom deceased was alleged to have insulted, was sufficiently under defendant's legal protection at the time of the homicide to constitute her within the purview of the statute a female relative, the court should have submitted this as adequate cause in his charge on manslaughter.

**2.—Same—Charge of Court—Self-Defense—Presumption—Means Used.**

Where, upon trial of murder, the evidence showed that the deceased threw a rock at defendant and was advancing on him with his knife, the court should have charged on the presumption, under article 676, Penal Code, that the deceased intended to use these instruments to kill defendant.

Appeal from the District Court of Tarrant.  Tried below before the Hon. Jas. W. Swayne.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Parker & Parker,* for appellant.—On question of insult to female relative:  Ex parte Jones, 31 Texas Crim. Rep., 422; Jones v. State, 33 Texas Crim. Rep., 492; Williams v. State, 30 Texas Crim. App., 429.

On question of court's failure to charge on presumption of the use of a deadly weapon by deceased:  Ward v. State, 30 Texas Crim. App., 687; Skraggs v. State, 31 Texas Crim. Rep., 563.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, his punishment being assessed at five years imprisonment in the penitentiary.

1.  He urges a reversal for the failure of the court to charge the jury that insulting conduct towards a female relative was adequate cause and basis for manslaughter.  The court charged manslaughter but not from this standpoint.  The evidence discloses that the killing occurred at the house of Tishy Gay.  The deceased, Douglass, went

to the house and was there shot and killed. The State witness Eikner testified that he saw the deceased approach the house and directly afterward he heard a woman on the gallery where the killing occurred talking to deceased. He said when he first saw deceased he was standing over on the far side of the street; he and the woman "were passing some remarks." He just used the same profane language as she did cursing. "I don't know exactly the words, but I knew he was using by-words; he was cursing this woman; I don't know exactly what he said to her; I never heard him call her a God damn bitch, though he might have." He further states he heard deceased say God damn you two or three times. That was all the vulgar language he heard him use. The woman was a brown skinned looking woman. "The woman Tishy now brought into court is not the woman; didn't look to be as old as this woman." Tishy Gay testified that deceased came to her house that night; that there was present at her house at that time Alma Woods, and her cousin, Bill Trimble, and defendant. Deceased came there about 10:30 o'clock at night as near as she could guess. She had never seen him before; did not know how he came to come there. When he first came to her door it was hooked, the screen door was hooked; the door was not locked; deceased snatched it wide open, and walked in, never knocked, never spoke to any one when he got in the house; that when he got in he turned around and walked this way and went up to the girl. Albert was sitting at the piano. The girl had a little whip in her hand and he snatched it; that was Alma Woods. He said, "Give me this whip," and started to cursing, and Albert said, "Look out, son, you will have to stop that, we don't allow nothing like that in this house." He kept on cursing and looked back and said, "I'll throw a rock through that God damn door." "So cousin Bill caught hold of him and tried to squash him down, tried to get him to hush, and they stood around there, and they all walked out, and I didn't pay any more attention to him. I heard deceased make a statement with reference to what he was going to do to this defendant; I heard him threaten to kill Albert, and I heard cousin Bill and them talking, and then I heard them say, 'Go on off.' I shut my door but I never did go on the outside. I went on back in the room." This witness says she did not go out on the gallery, but Alma Woods did; all went out there but herself. When deceased "went out of the house he seemed like he had a knife in his hand, in his left hand. Witness did not see anything but the blade." The defendant testified he had seen and knew the deceased, but had not seen him for about two or three weeks before the difficulty. He was at Tishy Gay's, which was his home. He was raised by Tishy Gay. She confirms that statement. When deceased came into the room defendant was at the piano playing. When he looked around deceased was in there and "snatched a souvenir buggy whip out of Alma's hand," and she said something to him and told him not to do it, and he commenced cursing her, and "I told him to stop, and he came and leaned on my shoulders and I says, 'Don't

lean on my shoulders, I have been working pretty hard,' and he jumps up and says, 'O, you God damn niggers is trying to play bully,' and I walked on to the door and said, 'Tom, we can't have that cursing in here, son, we don't have nothing like that in here.' So he tells me, 'I don't give a God damn about nobody. I am in my tea and you come out doors and I will cut your God damn head off.' In his tea, he meant that he was drinking." Appellant gave in detail an account of their further trouble in regard to the deceased throwing a rock at him, missing him, hitting the house, and coming on him with his knife in his left hand. He further says the deceased had never been to this house before so far as he was aware, and there had never been any trouble between them prior to that time. He further testified that when deceased snatched the whip from Alma, "he said something about a God damn bitch or something like that." "I forget now what. When he went to the door and was cursing, I says, 'Tom, you have got to get out of here,' and he says, 'God damn all of you, I am in my tea to-night and I don't give a God damn about any son-of-a-bitch.' "

It is in evidence that defendant was raised by Tishy Gay and her husband, and they were living at the house where deceased made his appearance, which he entered, and that was his, appellant's home, and that Alma Woods was their guest on the occasion of the difficulty, and was in the room where they were having a social time, appellant being at the piano playing. This is a sufficient statement of the record, so far as it applies to the question of adequate cause, viewing same from the standpoint of insulting conduct towards a female relative. We are of opinion the court should have given this phase of manslaughter law in his charge to the jury. Article 706 of White's Annotated Penal Code is in the following language: "Any female under the permanent or temporary protection of the accused, at the time of the killing, shall also be included within the meaning of the term 'relation.'" See Clanton v. State, 20 Texas Crim. App., 615. Subdivision 4 of article 702 of White's Ann. Penal Code is in the following language: "Insulting words or conduct of the person killed towards a female relation of the party guilty of the homicide." This constitutes adequate cause by statutory enactment. Alma Woods was sufficiently under the legal protection of appellant at the time of the homicide to constitute her within the purview of the statute a "female relative," and the language used was such as is contemplated by the statute to constitute adequate cause. The court should have charged this law as adequate cause with instructions to the jury if they found the facts so to be and appellant's mind was inflamed thereby, they would give him the benefit of the law of manslaughter.

2. It has been sufficiently shown by the statement already made that deceased was armed with a rock; he threw at appellant after they emerged from the house and was advancing on him with his knife. The court charged self-defense in a general way, but defendant reserved an exception to the court's failure to instruct the jury with reference to

the provisions of article 676 of White's Penal Code. We are of opinion the provisions of this section should have been given in the charge. That article reads as follows: "When the homicide takes place to prevent murder, maiming, disfiguring or castration, if the weapons or means used by the party attempting or committing such murder, maiming, disfiguring or castration are such as would have been calculated to produce that result, it is to be presumed that the person so using them designed to inflict the injury." For collation of authorities see Branch's Crim. Laws of Texas, section 476. Mr. Branch tersely states the proposition this way: "Where deceased is about to attack or is advancing on defendant with a deadly weapon, the law presumes that deceased intends to kill defendant, and where deceased is making or about to make an unlawful attack, and is so armed and his purpose is in any way doubtful, it is reversible error to fail to charge that if deceased was about to attack or was advancing on defendant with a deadly weapon, the law presumes that he intended to kill defendant or do him serious bodily injury." King v. State, 13 Texas Crim. App., 277. In that case the deceased was pursuing defendant with a pistol. Coopers v. State, 48 Texas Crim. Rep., 36, the prosecuting witness was advancing on defendant with a knife. In Ivory v. State, 48 Texas Crim. Rep., 279, the injured party was advancing on the accused. Pierce v. State, 21 Texas Crim. App., 540. In Teels v. State, 69 S. W. Rep., 531, the injured party had seized a pistol. The charge in that case was given from the standpoint of apparent danger, as it was in Ward v. State, 30 Texas Crim. App., 687. In Hall v. State, 43 Texas Crim. Rep., 479, the injured party was advancing with a pistol. In Cochran v. State, 28 Texas Crim. App., 422, the injured party was advancing with a billiard cue. In Jones v. State, 17 Texas Crim. App., 602, the accused was attacked with an axe. In McMichael v. State, 49 Texas Crim. Rep., 422, the injured party had drawn a pistol. In Hudson v. State, 59 Texas Crim. Rep., 650, 129 S. W. Rep., 1125, the weapon used was a knife. In Polk's case, 60 Texas Crim. Rep., 499, the attack was made with a loaded quirt. These are a sufficient number of cases, we think, to make it apparent and certain that the court should have charged with reference to the provisions of article 676, supra.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*