C. W. GREEN V. THE STATE.

No. 18309. Delivered June 24, 1936.
Motion for Rehearing Withdrawn October 28, 1936.

The opinion states the case.

*R. Temple Dickson,* of Sweetwater, and *D. J. Brookreson,* of Benjamin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, three years in the penitentiary.

Appellant was proprietor of a sandwich shop where drinks were sold and dances were carried on at night. Evidently quite a group of people were at appellant's place on the night of this homicide, many of whom were drinking intoxicating liquor. The testimony is in much conflict as to how the trouble started, and also as to what occurred. A number of witnesses testified that appellant shot and killed deceased while the latter was doing nothing, was standing still, with his hands down by his side. Appellant and some of his witnesses testified that deceased was advancing upon appellant at the time the shooting took place. We see no particular reason for setting out the testimony at any greater length than necessary to shed light upon the legal questions involved and raised in the record.

Appellant brings forward seven bills of exception. In the first he complains of the refusal of a requested charge, which is as follows:

"Gentlemen of the Jury: You are instructed by the court, on request of the defendant, that as a part of the law in this case, if you find and believe from the evidence that at the time deceased, Ervin Woellert, was shot by the defendant, C. W. Green, if he was so shot, that it reasonably appeared to the defendant, C. W. Green, viewed from his standpoint at the time, that the defeacesd, Ervin Woellert, was about to make an unlawful attack upon him with a knife, in such manner as was reasonably calculated to produce death or serious bodily injury, then the law presumes and you must presume that said Ervin Woellert intended to kill or seriously injure the defendant, C. W. Green."

It is manifest that the complaint in said bill is without merit. Said charge is not the law embodied in Art. 1223, P. C. Said article provides that if a homicide takes place to prevent murder, etc.,—if the weapon or means used by the party so attempting to commit murder, etc., be such as would have been calculated to produce that result, it is to be presumed that the person so using it designed to inflict the injury. Nothing in said article involves what may have appeared to the accused, or refers in any way to what might have been his viewpoint at the time. Said charge confuses the presumption referred to in Art. 1223, P. C., with the terms of a charge as usually given on self-defense, where that issue is raised. A comparison of the terms of the charge and of the language of Art. 1223 readily discloses the points of difference which seem to have caused confusion. Examining the charge given, we find that the court below told the jury in his charge again and again

that appellant had the right to use all force and means necessary to defend himself, or himself and his family, against any unlawful violence or attack; and had the right to kill deceased if the jury found from the evidence that at the time of the killing, from the acts, words and conduct of deceased, there was raised in the mind of appellant a reasonable expectation or fear of death or serious bodily injury to himself or his family, or either of them, from the deceased, even though there may not have been any real danger, and that if the killing took place under these circumstances, the accused should be acquitted. The court also charged on appellant's right to kill in defense of property under certain circumstances, and also charged on the law of threats, and appellant's right to kill deceased if the latter had made threats, and was manifesting an intention to carry same into execution. In other words, the charge given covered all the grounds contained in said special charge.

Appellant also excepted to the court's charge for its failure to submit the proposition of law embodied in Art. 1223, P. C. We have carefully examined the testimony for evidence from which a jury might have been justified in concluding that deceased was killed to prevent murder with a deadly weapon, but have failed to find same. As above indicated, many witnesses testified that deceased had nothing in his hands when he was shot. Appellant swore that deceased had a knife in his hand, and other witnesses support the proposition that at the time of the shooting and shortly before same deceased did have a knife. Appellant swore that deceased cut him just above his belt and on the arm, and was coming at him with the knife when he shot deceased four times and killed him. He gives no description of the knife referred to. The doctor who treated him for his alleged injuries testified that he found a slight abrasion above appellant's waistline and another on his arm; that he did not sew them up because they were not such places as required being sewed up. We have carefully gone through the record in an effort to find any testimony that the knife claimed by appellant to have been in the hand of deceased and to have been used by him in an actual or threatened attack upon appellant immediately preceding the killing,—was a deadly weapon, or one whose use would have been calculated to produce death, and have not found such testimony. The facts surrounding the killing were witnessed and detailed by many witnesses, only two of whom claimed to have seen deceased with a knife,—appellant and his son-in-law John Ethridge,—neither of whom undertake to describe the knife

claimed to have been seen by him. No witness gave any testimony from which the deadly character of the knife, if any was used, could be reasonably inferred. Ethridge said deceased cut him with a knife in the neck before this killing, but he did not see the knife nor state how deep was the cut. The doctor who attended Ethridge said he saw scratches on Ethridge's body, and a three or four inch cut on his neck, which latter he sewed up with one running stitch. He said nothing about the depth of the cut, nor the apparent size of the instrument inflicting it. Appellant said that deceased had struck at him with a knife and cut him on the stomach and on the arm, and was coming toward him with the knife at the time he shot him. Appellant did not undertake to describe the knife in any particular, and the doctor who attended appellant, as above indicated, testified that the only cut wounds of any kind he saw upon appellant was a slight abrasion on the stomach and one on the arm, neither of which was of sufficient depth to require treatment. Under these facts we see no duty upon the trial court to give in charge the provisions of Art. 1223, P. C.

As above indicated, the court did in fact give to the appellant every reasonable presentation of the law applicable to the facts of the case presenting the issue of self-defense upon almost every possible hypothesis.

As pertinent to the lack or necessity for giving Art. 1223, P. C., see Renow v. State, 56 Texas Crim. Rep., 343; Clark v. State, 56 Texas Crim. Rep., 293; Coker v. State, 59 Texas Crim. Rep., 241; Mason v. State, 88 Texas Crim. Rep., 642; Forrester v. State, 109 Texas Crim. Rep., 368; Drake v. State, 153 S. W., 848; Reagan v. State, 157 S. W., 483; Gunn v. State, 95 Texas Crim. Rep., 276.

We have examined each of appellant's other bills of exception. Bill No. 3 complains of the argument of the district attorney in closing the case, in that he said "That lawyer from Sweetwater got up here and said he would take the responsibility for writing the motion for continuance, why, what does he mean—letting us bring all of these witnesses here and costing the State of Texas thousands of dollars." We fail to find any point made in the bill upon which could arise any inference of injury to the accused.

Bill of exceptions No. 4 contains a statement of the court made at the time the exception was taken, which must be considered by us in that connection. As we understand the record, there is no contention but that appellant and those employed by

him were serving drinks at the time of the killing and preceding such time.

Appellant's bill No. 5 contains two pages of questions and answers without any certificate of the trial court that it was necessary to set same out in this form in order to make its contents appear. Our statute forbids that a bill of exceptions be in question and answer form, and this bill, therefore, can not be considered. Bills Nos. 6 and 7 have both been examined, and we find nothing in same calling for any discussion on our part.

Responding to appellant's claim that he was entitled to a charge on self-defense from a joint attack by deceased and Rich, we have searched the record to find if there be anything supporting the conclusion that appellant was defending against such joint attack, but have not found it. Rich was a witness in the case, and testified that he was doing nothing at the time of the shooting, but was some ten feet from deceased at the time the latter was killed. No other witness testified that Rich was doing anything which could be construed to be an attack upon appellant at the time of the shooting. Appellant himself testified that shortly before he shot deceased Rich and deceased were coming toward him. We quote from appellant's testimony:

"Rich was not right by Ervin at that time. * * * Ervin came around on the north side of the lawn * * * Then he made a dive at me and cussed me, and I shot him. * * * The first move he made, he jumped with his knife in his hand like this (indicating). * * * I put my hand in my pocket. * * * I shot him as he was coming toward me. * * * Ed Rich was on the little walk, both standing side by side, coming toward me. Ed Rich never made no move. * * * Ed Rich was not in that dive; * * * I did not shoot them both. If Ed Rich got shot he got shot accidentally."

The mere fact that Rich and deceased were coming toward appellant prior to the time appellant says deceased made a dive at him with a knife, and jumped at him cursing, which appellant says caused him to shoot deceased,—furnishes no predicate for the claim that the court should have charged on self-defense against a joint attack by Rich and deceased.

Being of opinion that the record in this case fails to disclose any error, the judgment will be in all things affirmed.

*Affirmed.*

## ON MOTION TO WITHDRAW MOTION FOR REHEARING.

HAWKINS, JUDGE.—On June 24, 1936, an opinion affirm-

ing the judgment of conviction was announced. On July 8, 1936, appellant filed a motion for rehearing. On October 5, 1936, appellant by his personal affidavit requests leave of the court to withdraw the motion for rehearing, and that the judgment of affirmance stand.

The request for leave to withdraw the motion is granted, and the clerk is directed to issue mandate on the judgment of affirmance.

*Request granted.*