**Henry Lee HENDERSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 39402.**

Court of Criminal Appeals of Texas.

March 9, 1966.

Rehearing Denied May 4, 1966.

John J. Browne (by Court Appointment), Houston, for appellant.

Carol S. Vance, Dist. Atty., Charles E. Bonney and Erwin G. Ernst, Asst. Dist. Attys., and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Judge.

The offense is murder; the punishment, 20 years.

The indictment alleged that appellant did with malice aforethought kill Henry Amey by shooting him with a gun.

Appellant pleaded not guilty and filed application for suspended sentence.

Evidence was introduced by the state to the effect that Amey died as the result of a gunshot wound of the chest. The shooting occurred in The Texas Cafe, owned by one Isaac Texas who died prior to the trial.

Police Officer Alvin B. Young testified that he heard an explosion of some kind from the direction of the cafe and some 30 seconds later Isaac Texas came out calling to him and, pointing in the direction appellant and his wife were walking, said: "That man just shot a man in my place."

Officer Young testified that he ran immediately to appellant and grabbed him by his left hand in which he was carrying a pistol. After a brief struggle, appellant dropped the pistol that was in his hand and then another pistol which he had on his person fell to the ground.

Vickie Jackson testified as an eye witness. According to her testimony, the deceased, who was sitting at a table with his wife, got up and stood by the juke box. Appellant, who was sitting with his wife at another part of the cafe, then got up and the two men were standing facing each other and were talking. She did not hear what was said and did not know whether they were arguing or not. She heard a shot and saw that appellant had something in his hand. The deceased's hands were to his side. When the shot was fired he crossed his arms in front of his chest—"sort of grabbed his chest" and backed up and "fell on a lady" and when the lady got out of the way he fell to the floor. She identified appellant as the man who did the shooting and further testified that when the shot was fired his wife grabbed both his hands and backed him out the door. She saw nothing in the hands of the deceased and saw no weapon on the floor around him or on his body after he was shot.

The state introduced the testimony of Doctor Robert Bucklin who conducted the autopsy. He described the gunshot wound and testified that such a wound, which penetrated the aorta, would cause death within a short time.

The state also introduced testimony of expert witnesses who conducted tests of the clothing and the pistol and testified that the shot was fired from a distance of about 8 feet.

Appellant testified in his own behalf and offered the testimony of his wife. Her version was that appellant got up from the table and went toward the front door and the deceased came from behind him and pulled him around. While they were facing each other, about a hand length apart, and were talking "Amey advanced on Henderson (appellant) and Henderson pushed him back and when he pushed him back he advanced again and when he advanced again he came out with what appeared to be a knife and Henderson shot * * * I

jumped between them and grabbed Henderson by the hand to take him outside."

According to the testimony of this witness the deceased stood a while and walked backwards a couple of steps and then grabbed his chest. She testified that after Officer Young stopped appellant and got the guns she remembered that she had left her cigarettes and change and the truck keys on the table and went back into the cafe to get them, at which time Amey (the deceased) was alive and was sitting in a chair still holding his chest.

Appellant testified that he was employed by Uvalde Building Company in construction work. On the day of the killing he was in a cafe in the vicinity of The Texas Cafe looking for workmen to assist in pouring concrete the next day. The deceased had worked twice in this capacity and he was looking for him, but after waiting 45 minutes to an hour, he hired two other men for the job.

When he was about to leave this cafe he saw the deceased who seemed to be angry because he had gotten someone else, and he told appellant he would beat him up or whip him and a few words like that, and that he (appellant) said "let's forget about it," and he went home.

Some 30 minutes later appellant and his wife left home in his pickup truck and went to The Texas Cafe, taking the .25 caliber pistol and the .32 caliber pistol into the cafe with him. Appellant testified on his direct examination that he was not looking for the deceased and had no particular reason to do so; that he feared him in a sense; that he was 5 feet 9 inches tall and weighed 140 pounds whereas he estimated that the deceased was 5 feet 11 inches tall and weighed about 180 or 190 pounds.

Asked why he took the pistols from the truck into the cafe, appellant answered: "I put them in my pocket in case of if I did see him I would have something to defend myself with in case he did mean what he had said earlier that date."

Appellant's version of the events surrounding the killing was that he was going outside the cafe to lock his truck and first saw the deceased when he was on his way out; that the deceased turned him around and said " 'What I said this evening still goes' * * * And that's when he went in his pocket. * * *

"Q. O.K. And describe as best you can what he did in relation to his pocket or whatever you meant by that.

"A. Oh, he just put his hand in his pocket and started moving toward me slowly, and I said why don't you just go on and forget about it, and I took my hand and pushed him away and that's when he kept coming toward me and that's when I pulled the pistol from my pocket.

"Q. Why did you pull the pistol?

"A. In order to protect myself because I thought he was going to hurt me with something.

"Q. What did you think it was he might have?

"A. I thought he had a knife.

"Q. And did you think he was going to use that knife on you?

"A. Yes, I did after the way he had talked.

"Q. Did you have anything particularly against this man?

"A. No, I didn't have anything against him.

* * * * * *

"Q. Do you recall taking—pulling that pistol out and firing it?

"A. I recall pulling it. The next thing I remember I heard the shot myself. I don't remember pulling the trigger. I remember pulling the gun out but I don't remember pulling the trigger.

"Q. Do you recall when you reached in and pulled that pistol out whether you intended to fire it?

"A. No.

"Q. No what?

"A. No, I didn't intend to fire it. All I wanted to do was try to stop him.

"Q. All this happened in seconds, his movements and your movements there?

"A. That's correct.

"Q. And you honestly felt at that moment he intended to kill you or do you serious bodily injury?

"A. Yes sir.

"Q. You really believed that?

"A. Yes sir.

"Q. And whatever you did, all you intended to do was to protect yourself?

"A. Yes sir.

"Q. And you may or may have intended to fire that pistol?

"A. That's right."

The court's charge submitted murder with malice, murder without malice and aggravated assault, and submitted the defense raised by the testimony of appellant and his wife of self-defense against an attack or threatened attack creating in the mind of the person attacked a reasonable expectation of death or serious bodily injury.

■ The jury rejected appellant's defense and his plea for suspension of sentence and the evidence is sufficient to sustain their verdict.

Appellant's first claim for reversal is the failure of the court to submit in his charge the law of self-defense against an unlawful attack which did not threaten death or serious bodily injury.

Appellant cites many cases construing Art. 1224, Vernon's Ann.P.C. which relates to the right of self-defense against a milder attack. None of the cases cited are deemed applicable under the facts. There was no testimony showing that the deceased was in the act of making an assault upon appellant when he was shot.

Appellant's testimony was that the deceased was coming toward him and he thought that the deceased had a knife and was going to use it; that he pulled the pistol out but did not intend to fire it. All he wanted to do was try to stop him. He testified that all of this happened in seconds and he honestly believed at that moment that the deceased intended to kill him or do him serious bodily injury.

Where the evidence does not show an actual attack being made by the person killed, no necessity exists for the trial court to charge as to the right of the accused to defend against a milder attack as distinguished from a deadly attack. Booker v. State, 165 Tex.Cr.R. 44, 302 S.W.2d 431; Mays v. State, 170 Tex.Cr.R. 293, 340 S.W.2d 43.

Appellant's next complaint is that the trial court erred in failing to charge the jury upon the law of reasonable doubt as applied to murder without malice.

Following the submission of murder with malice, the charge instructed the jury: "If you do not so believe from the evidence, or you have a reasonable doubt thereof, that the defendant is guilty of murder with malice aforethought, you will next consider whether the defendant is guilty of murder without malice."

Following the submission of murder without malice, the jury was instructed: "If you do not so believe from the evidence, or you have a reasonable doubt thereof, you will find the defendant 'not guilty' and so say by your verdict.

"If, after considering the evidence, you have a reasonable doubt as to whether or not the defendant is guilty of murder with malice, or of murder without malice, but you believe beyond a reasonable doubt that the defendant is guilty of some grade of offense, you will then consider if the defendant is guilty of an aggravated assault."

Appellant complains that the charge should have further instructed the jury as was done in Beasley v. State, 171 Tex.Cr.R. 115, 346 S.W.2d 123, 125.

Though such additional charge would have been appropriate, the charge given, viewed in the light of Art. 666 Vernon's Ann. C.C.P. (Now Art. 36.19 C.C.P. 1965) was sufficient and the court's failure to give the additional instruction shows no reversible error. Martinez v. State, 168 Tex.Cr.R. 18, 322 S.W.2d 635.

"Though the better practice be to apply the doctrine of reasonable doubt in each paragraph and in connection with each defensive theory, it does not follow that failure to do so constitutes reversible error." Cain v. State, 154 Tex.Cr.R. 284, 226 S.W.2d 640, 643.

Appellant next complains of the overruling of his motion for mistrial based upon certain remarks of counsel for the state in his closing argument. Appellant's Formal Bill of Exception No. 1 was refused by the trial judge for the reason that all of the closing argument made by counsel for the state was invited and was in reply and answer to argument made by defendant's counsel.

Appellant excepted to the court's refusal of said bill but filed no bystander's bill.

Appellant's Formal Bill of Exception No. 2 complains of the same remarks of the assistant district attorney as were complained of in Formal Bill of Exception No. 1. This bill was not approved as filed but was qualified by the trial judge.

Appellant did not accept the court's qualifications or agree with the court's reasons

for not approving the bill as filed, as required by Art. 760d V.A.C.C.P.

■ Having declined to accept the court's qualifications to his Formal Bill of Exception No. 2, and the court having refused his Bill of Exception No. 1 relating to the same matter, and no bystander's bill having been filed, the complained of remarks and the claimed error in overruling appellant's motion for mistrial are not before us. Art. 760d V.A.C.C.P. and cases cited under Note 3.

The remaining ground for reversal briefed by appellant's counsel is that appellant was denied a fair and impartial trial in that the trial court permitted counsel for the state to infer that appellant's counsel fabricated the defense.

■ No bill of exception raising such question appears to have been reserved.

We are directed to the following portion of the statement of fact which relates to the cross-examination of appellant's wife, after she had testified that the deceased put his hand in his pocket and pulled out something she thought was a knife:

"Q. You haven't been talking to the lawyers for this defendant—

MR. BROWNE: We will object to that.

THE COURT: Overruled.

MR. BROWNE: Note our exception.

"Q. (By Mr. Ernst) Did they ever tell you that if you would get up here and testify that this man put his hand in his pocket and come out with something that your husband might could beat this murder case and get off with self defense? Did they tell you that?

"A. No sir.

"Q. Did they tell you anything like that?

"A. No."

It was shown that the witness had made an affidavit on the night of the killing in which she said that appellant was still married "to his other wife," and that the deceased had his hand in his pocket, but did not say that he pulled anything out of his pocket.

In the absence of a timely objection stating the reason therefor, the contention that appellant was denied a fair trial by the question of the assistant district attorney is without merit.

The judgment is affirmed.

## ON APPELLANT'S MOTION FOR REHEARING

MORRISON, Judge.

Appellant argues on rehearing that our original opinion erred in refusing to pass on his Formal Bill of Exception No. 2 and in treating it as a bill refused by the trial court, appellant having failed to accept the reasons assigned by the trial judge as provided in Article 760d, Vernon's Ann.C.C.P.

It is appellant's position that his Formal Bill of Exception No. 2 should stand approved as submitted without qualification; he contends that the court omitted to refuse the bill and thereby approved it, notwithstanding the court's qualification thereto.

We do not agree and hold that the qualification *on its face* constituted a refusal to approve appellant's Formal Bill of Exception No. 2 and adhere to our view that the bill is not before us for review in light of the failure of the defendant to accept the trial court's reasons for refusing to approve the bill or to file bystanders bills. Cooper v. State, Tex.Cr.App., 365 S.W.2d 793, and Alston v. State, 170 Tex.Cr.R. 17, 338 S.W.2d 723.

Appellant's motion for rehearing is overruled.